# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DIRECTV, INC.,**

        **Plaintiff,**

**v.**                                                                 **Case No. 03-CV-1106**

**DAVID A. GOEHRE,**

        **Defendants.**

## DECISION AND ORDER

The plaintiff, DirectTV, Inc. ("DTV"), filed suit against the defendant David A. Goehre ("Goehre"), seeking damages and injunctive relief for alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (2004), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 (2004). Before the Court is Goehre's motion for summary judgment.

### I. FACTUAL BACKGROUND

The facts in this case are construed in a light most favorable to the plaintiff.[1] *See Hall*

---

[1] The Court notes that Civil Local Rule 56.2 (E.D. Wis.) requires the movant to provide with its motion either a stipulation of facts between the parties or the movant's proposed findings of fact. These factual propositions must be set out in numbered paragraphs. Civil Local Rule 56.2(a) (E.D. Wis.). Here, Goehre did not comply with this rule, as he did not provide his proposed findings of fact until he filed his reply brief. While the Court could disregard Goehre's factual assertions in his brief because he did not comply with the local rule, *see Metro. Life Ins. Co. v. Johnson,* 297 F.3d 558, 562 (7th

1

*v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). DTV is the nation's largest digital satellite television provider. (Compl. ¶ 1.) In order to provide its subscribers with satellite television, DTV must provide certain hardware to its subscribers, including a satellite dish, a receiver/decoder (IRD), and an access card to operate the IRD. (Whalen Decl. ¶ 5.) DTV encrypts its signals, and the access card descrambles the encrypted signal based on the programming package purchased by the subscriber. (*Id.*)

When DTV transmits its encrypted signals, the signals are subject to electronic hijacking by unauthorized access cards that can descramble the signals. (*Id.* ¶ 16.) DTV disables these unauthorized access cards by electronically sending what are called Electronic Counter Measures ("ECMs".) (*Id.* at ¶ 25.) ECMs target unauthorized access cards and disables, or "loops" them. (*Id.*) In response to these DTV security measures, satellite pirates have developed "unloopers," which restore functionality to the disabled access card. (*Id.*)

In an attempt to counter these piracy efforts, DTV executed several writs of seizure upon mail shipping facilities that are used by major providers of unloopers. (Compl. ¶ 3.) One such provider is Canadian Security and Technology (CST). (Compl. ¶ 16.) DTV discovered from its seizure of a mail shipping facility that Goehre purchased eight unloopers from CST. (Hauck Decl. ¶ 6, Ex. A.) A Federal Express receipt indicates that the eight unloopers were delivered to Goehre's residence on April 10, 2001. (*Id.* ¶ 6, Ex. B.) At that time, Goehre's next door neighbor believed that Goehre had a gray satellite dish on the roof

---

Cir. 2002), the Court declines to do so in these circumstances.

2

of his house. (Haberlein Dep., p. 18.)

DTV also has retained an expert witness, William Gatliff. Gatliff declared that an "unlooper is a devise designed for the purpose of modifying DIRECTV Access Cards to disable the security features that DIRECTV uses to protect one version of its Access Cards, and that the devices have no other practical purpose." (Gatliff Decl. ¶ 2.) Gatliff concludes that "a person who purchases an unlooper either has a modified DIRECTV Access Card that has been disabled with an ECM, or intends to use the unlooper to modify an Access Card." (*Id.* ¶ 5.)

On May 23, 2003, DTV filed a complaint against Goehre, raising three claims. Count I alleges Goehre received DTV satellite signals without authorization in violation of 47 U.S.C. § 605(a). In Count II, DTV claims that Goehre "intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept" DTV's satellite signals, in violation of 18 U.S.C. § 2511(a). Finally, in Count III, DTV claimed a violation of 18 U.S.C. § 2512(1)(b) for the possession of pirate access devices. In the Court's Order of August 2, 2004, the Court dismissed Count III of DTV's complaint, finding that there is no private cause of action for merely possessing pirate access devices.

Now, in Goehre's summary judgment motion, he raises two arguments. First, he argues that the Court should dismiss that portion of Count II in which DTV alleges that Goehre "endeavored to intercept," "procured other persons to intercept," or procured other persons to endeavor to intercept, because there is no private cause of action for such

3

violations. Second, Goehre posits that DTV has not provided sufficient evidence to convince a rational trier of fact that he received DTV satellite signals without authorization, or that he intercepted DTV's satellite signals.

## II. STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every

4

issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

### III. DISCUSSION

A.  Civil Liability for Endeavoring to Intercept and/or Procuring Others to Intercept or to Endeavor to Intercept Transmissions

The Electronic Communications Privacy Act ("ECPA") imposes criminal liability on one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept" communications. 18 U.S.C. § 2511(1)(a). Section 2520(a) provides for a private right of action against those who do not comply with certain provisions of § 2511(1)(a). Section 2520(a) states that "any person whose . . . communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . engaged in that violation . . . ." The question before the Court, therefore, is one of statutory interpretation: whether DTV can bring a civil action against Goehre for "endeavoring" to intercept communications, or "procuring" other persons to intercept or endeavor to intercept communications.

The Court presumes that Congress acts intentionally when it includes particular language in one section of a statute but omits it in another section. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994). Thus, the Fifth Circuit in *Peavy v. WFAA-TV,*

5

*Inc.*, 221 F.3d 158 (5th Cir. 2000), ruled that one who procures another to intercept communications can be criminally liable, but cannot be sued in a civil action pursuant to § 2520(a). *Id.* at 169. The court in *Peavy* reasoned that while procurement was criminalized in § 2511(a), it was not mentioned in § 2520(a), and thus, Congress did not intend to allow a civil action against someone for merely procuring another to intercept communications. *Id.*

Likewise, one other court in this District has held that § 2520(a) does not authorize a civil action against one who endeavors to intercept or procures another to intercept communications. *See DirecTV v. Catt*, 03-CV-1372 (July 28, 2004) (Adelman, J.). This Court agrees. The plain language of § 2520(a) authorizes relief only against those who "intercepted, disclosed, or intentionally used" communications. There is no mention of granting a civil right of action against persons who endeavor to intercept or procure another person to intercept communications. Therefore, the Court grants Goehre summary judgment over those claims in the Complaint that allege Goehre endeavored to intercept, procured other persons to intercept, or procured other persons to endeavor to intercept communications.

B.    Sufficiency of the Evidence

Goehre also alleges that there is no genuine issue of material fact that he intercepted DTV's satellite communications in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(a)(1). Section 605(a) provides, in relevant part, that:

6

> no person receiving [or] assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . . except [in authorized circumstances.] No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person.

Section 605(e)(3)(A), in turn, provides a civil remedy for "[a]ny person aggrieved by any violation of [§ 605(a)]."

Similarly, as discussed above, 18 U.S.C. § 2511(1)(a) imposes criminal liability upon any person who intercepts communications, and § 2520(a) provides a civil action against those who intercept communications in violation of § 2511(1)(a).

DTV's allegations, pursuant to § 605(a) and § 2511(1)(a), hinge entirely upon whether DTV has created a triable issue on the element of actual interception. While circumstantial evidence can serve this end, *see Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960), when the evidence is primarily confined to showing *possession* of pirating devises, as opposed to *actually using* those devises to intercept DTV's communications, summary judgment may be appropriate. *See DirecTV, Inc. v. Minor*, 2005 WL 1870779, at *2 (5th Cir. Aug. 9, 2005).

The evidence presented in this case, construed in a light most favorable to DTV, is the following: (1) that in early 2001, Goehre purchased eight pirating devices called unloopers; (2) DTV's expert witness, William Gatliff, declared that an "unlooper is a devise designed for the purpose of modifying DIRECTV Access Cards to disable the security features that DIRECTV uses to protect one version of its Access Cards, and that

7

the devices have no other practical purpose" (Gatliff Decl. ¶ 2.); and (3) Goehre's next door neighbor stated that Goehre had a gray satellite dish on his roof for an extended amount of time, perhaps starting as early as 2000. (Haberlein Dep., p. 18.) The question is, therefore, whether a rational fact-finder could construe this circumstantial evidence as showing that Goehre actually intercepted DTV's satellite signals.

Both parties rely upon *DirecTV v. Karpinsky*, 274 F.Supp.2d 918 (E.D. Mich. 2003) to support their respective positions. In *Karpinsky*, like here, DTV sued an individual for violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). Initially, the court in *Karpinsky* granted the defendant's motion for summary judgment because DTV only provided evidence that the defendant possessed pirating devices, not that he ever subscribed to DTV services or owned the necessary satellite reception equipment. *Id.* at 920. However, in DTV's motion for reconsideration, DTV proffered additional evidence that the defendant purchased DTV satellite equipment. *Id.* This additional evidence that the defendant owned DTV satellite equipment, combined with the defendant's possession of pirating devices, persuaded the court to find that a reasonable fact-finder could infer that the defendant intercepted DTV's satellite signals. *Id.* at 921. The court, thus, granted DTV's motion for reconsideration and denied the defendant's motion for summary judgment. *Id.* at 922.

Goehre argues that the evidence proffered in *Karpinsky* is distinguishable from that proffered in the instant case because unlike in *Karpinsky*, there is no evidence here

8

identifying the satellite dish on Goehre's roof as a DTV satellite dish. In other words, the satellite dish that was on Goehre's roof, combined with his possession of the eight unloopers, may allow a reasonable fact-finder to infer that he intercepted satellite signals, but not that he intercepted DTV's satellite signals.

This argument, though, improperly discounts the testimony of DTV's expert, William Gatliff. Gatliff declared that the unloopers that Goehre allegedly purchased "have no other practical purpose" other than to modify DTV access cards or disable the ECMs that DTV uses to protect its access cards. (Gatliff Decl. ¶ 2.) The Court must presume, construing Gatliff's statement in a light most favorable to DTV, that the unloopers purchased by Goehre can only be used with DTV satellite equipment, as opposed to other kinds of satellite equipment. Thus, Gatliff's expert testimony, combined with evidence that Goehre purchased unloopers and that he had a satellite dish on his roof at a time when he had the unloopers, convinces the Court that there is a genuine issue of material fact as to whether Goehre unlawfully intercepted DTV's satellite signals.

9

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Goehre's Motion for Summary Judgment (Docket # 37) is **GRANTED**, in part, to the extent that DTV cannot assert a cause of action pursuant to 18 U.S.C. § 2511 that Goehre endeavored to intercept, procured others to intercept, or procured others to endeavor to intercept satellite transmissions. The motion for summary judgment is **DENIED**, in part, to the extent that there is a genuine issue of material fact for trial as to whether Goehre unlawfully intercepted DTV's satellite signals in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

Dated at Milwaukee, Wisconsin this 19th day of September, 2005.

BY THE COURT

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**